GOSSETT-WARNER DRAINAGE DISTRICT OF HOLT COUNTY, RESPONDENT, v. CARL J. GRISWOLD ET AL., APPELLANTS.*—16 S. W. (2d) 691.

Kansas City Court of Appeals. ——— ——, ——.

1042

*A. M. Tibbels* for respondent.

*Strop, Silverman & Strop* for appellants.

BARNETT, C.—This is an appeal by the owners of real estate from a judgment of the circuit court of Holt county, Missouri, extending the boundaries of the Gossett-Warner Drainage District of that county. The drainage district was originally incorporated in the year 1915 by a decree of the circuit court, at which time the boundaries of the district included approximately 1400 acres of land. On June 11, 1926, the supervisors of the drainage district filed in the circuit court a petition in which it was alleged that there were certain tracts of land and other property in Holt county, Missouri, lying adjacent to the Gossett-Warner Drainage District which were. swamp, wet and overflow lands and lands subject to overflow, and which had an outlet in common with the lands embraced in said district. The petition set out the boundary lines of the said tracts lying adjacent to the district, naming the owners and stating the acreage thereof, a total of 4628.92 acres. A railroad right of way and the public highways owned by Holt County, Missouri, were included in the descriptions. The petitions alleged that by decree of the circuit court the drainage district had been granted permission to amend and change its plan for reclamation and that thereafter, by its board of supervisors, it did duly amend and change its plan for reclamation as provided for in the decree, and that the district was about to put said plan of reclamation so amended and changed into effect and to construct the ditches and levees and other improvements therein provided for; that it was necessary, in order that the swamp, wet and overflow lands and lands subject to overflow and lands having a common outlet with the lands in the district might bear their proportionate share of the cost of construction of the improvements, that the boundary lines of said district be changed and extended so as to annex and include therein said lands and other property. The petition prayed for an order, judgment, and decree of the court extending the boundary lines of the district so as to annex

and include said lands and that the court appoint commissioners to appraise the lands to be taken for its rights of way, holding basins, and other works, and to assess the benefits and damages accruing to any of all lands, public highways, railroads and other property already included in the district or that should be included by the proposed change of the boundary lines and for carrying out and putting into effect the reclamation provided for in the amended plan for reclamation. Appellants and others filed their objections to the extension of boundaries. Evidence was heard and the court granted the prayer of the petition in part by extending the boundaries but by excluding a part of the lands sought to be included.

The evidence shows that the area sought to be annexed to the district consists of approximately 4500 acres of land, and the acres which was actually annexed by the order of the court was approximately 3200 acres.

The drainage district is located south of the town of Forbes in Holt county, Missouri, and north of the Missouri river. A railroad right of way runs along the north side of the extended boundaries of the district. Immediately north of the railroad right of way there is a line of bluffs or hills, and all of the land south of the bluffs and north of the Missouri river is low, flat, level bottom land, and except as hereinafter noted, is subject to overflow. There are seven streams that carry the water from the bluffs and the highlands to the north of the bluffs, under the railroad, and to the Missouri river. Meyer branch comes under the railroad track nearly a mile west of the town of Forbes and flows into the district as extended. Forbes branch comes under the railroad track about one-half mile east of the town of Forbes. East of Forbes branch, Dyer, Easter, Meade, McWilliams, and Hicks Hollow branches (in the order named) pass under the railroad track and into the territory which is sought to be included in the extension of the district. Without an attempt at accuracy, it may be stated that these branches are approximately one-half to three-fourths of a mile apart where they pass under the railroad track. There is a low place within the boundaries of the original drainage district which is referred to in the evidence as the old bed of the Little Tarkio or the Little Tark. It starts in the northeast corner of the original district, runs in a southwesterly direction then turns in a northerly direction and extends for something less than a quarter of a mile north of the original boundary of the district. Water continually stands in this depression. The evidence shows that in times of high water the water from the Forbes and the Easter branches overflow in a southwesterly direction onto the lands within the original boundaries of the district. The Dyer branch is a small stream which is often dry, but it also overflows. It is

between the Forbes and the Easter branches. In times of high water the Meyer branch overflows into the north end of the old bed of the Little Tarkio where it extends outside of the original boundaries of the district. The evidence indicates that the water from Meade branch and the McWilliams branch and the Hicks Hollow branch does not overflow the lands within the original boundaries of the district. The water which overflows upon the lands within the original boundaries also overflows lands to the west, north and east of the original district, together with an eighty-acre tract known at the McAffe tract, which is adjacent to the southeast corner of the district. Lands lying east of the Easter branch are subject to overflow from that stream as well as from the Meade and McWilliams branches. The evidence shows that the land immediately adjacent to the Missouri river is higher than the land immediately north, and as a result some of the land lying adjacent to the Missouri river is not subject to overflow even during flood times. Mr. Peret, the chief engineer of the district testified that he had had about twenty-three or twenty-four years experience as a civil engineer; that he had been chief engineer of Nodaway Drainage District No. 1 and 2, for several years and had been chief engineer of the Little Tarkio Drainage District the greater part of the time from 1905 to 1915; that he had made a topography of the lands within the original district and those adjacent thereto and was familiar with the lands sought to be included in the boundaries; that the old bed of the Little Tarkio carried the Meyer Branch water and surface drainage to the Missouri River, except where it broke over at a certain point; that the Meyer Branch overflowed the lands in the north part of the district sought to be extended and filled up to overflowing the old channel of the Little Tarkio, inundated the property lying south of the town of Forbes, and flowed down over the lands within the original boundaries of the district; that at flood times the water from Easter Branch flowed southwest and united with water from the Forbes Branch, thence flowed onto the lands of the drainage district; and that in so doing they overflowed the lands adjacent to the district upon the east and south; that the water from the Meyer Branch had a common outlet with other water in the drainage district and adjacent thereto and that you could not drain the water from the lands of the drainage district without draining from the lands adjacent thereto; that it was impossible to drain the water off of the lands in the district which overflowed from the Forbes Branch and the Easter Branch without also draining the lands outside of the district which were overflowed by those branches. He testified that the water from the Meade and McWilliams Branches did not push back upon the district as originally organized, but that all of that bottom land was so near the same elevation that it was well nigh impossible to drain

a part of it without levying around the particular piece of land to be drained in order to keep the other water from the creeks from coming onto it. He stated that at high water time he had stood at the northeast corner of the drainage district and could not tell by looking east whether he was looking at the Forbes Branch water or the Easter Branch water, because they had intermingled, and that when he went further east he could not tell at high water time whether he was looking at the Easter Branch water or the Meade Branch water; and that this was equally true as to the water from the Hicks Hollow Branch and the McWilliams Branch, as the water from both of these branches overflowed upon Mr. Ford's land.

It is contended that there was no evidence that the land of certain of the appellants ever overflowed and that they should be excluded from the district whether the decree of the court is reversed *in toto* or not. But we will set out the evidence concerning the overflow upon the lands of particular appellants when we discuss the the contentions of these appellants individually.

The original plan of reclamation provided for a levee to protect the land within the district from overflow from water outside the district and for drainage of the old bed of the Little Tarkio and surface water by ditching. The amended plan of reclamation provides for a number of ditches outside the district. It provides for a ditch straightening the Meyer Branch, for another ditch straightening the Forbes Branch, a ditch which will empty the water from the Dyer Branch into the Forbes ditch, a ditch straightening Easter Branch, and another ditch emptying the water from the Meade Branch and the McWilliams Branch into the Easter ditch. It also provides for a short ditch straightening the Hicks Hollow Branch and for a ditch running from the south bend of the old bed of the Little Tarkio in an easterly and northeasterly direction through the district as originally organized and passing for a short distance beyond those boundaries, but within the boundaries as extended. It provides for another ditch lying just below the original boundaries and at the southeast corner thereof, but within the boundaries as extended. The amended plan of reclamation provides for more ditches and of greater length outside of the original boundaries then within it.

The court decreed an extension of boundaries but excluded certain lands southwest of the original district and certain other lands upon the west and in the northwest corner of the proposed extended district. The extended boundaries of the district, as fixed by the decree of court, do not include any of the land through which Hicks Hollow Branch flows nor any of the land south or east of the point where that branch flows under the railroad track. The appellants, in their objections to the extension of the boundaries as filed in the

Circuit Court, denied that all persons owning lands and other property within the boundaries of the proposed extension of the district were named in the petition as owners of any such lands or property, and stated that the St. Joseph Transmission Company, a corporation, owned a right of way over and across lands within the boundaries of said extension and all poles, wires and transmission lines for the transmission of electricity over and across said lines, and owned a right of way across said lands for said purpose; that the Western Union Telegraph Company, a corporation, owned a similar right of way and easement for the maintenance and construction of its telegraph lines extending across said lands in said proposed district; that said corporations were necessary parties in this cause of action and that the court was without jurisdiction to proceed in this cause until said corporations had been legally notified of the institution of the action. At the trial the following admission was made:

"Mr. SILVERMAN: Will it be admitted that the lines of the St. Joseph Transmission Company are located upon a portion of the lands described in the proposed extension?

"Mr. TIBBLES: Well, if you tell me they are I will admit it. I do not know they are. . . .

"Mr. TIBBLES: Is there just one line?

"Mr. SILVERMAN: Yes, that's all.

"Mr. TIBBLES: Alright.

"Mr. SILVERMAN: Will it be admitted that the Western Union Telegraph Company has telegraph poles and lines on the right of way of the Burlington Railroad Company within the lines of the proposed extension?

"Mr. TIBBLES: I think so."

Appellants introduced the testimony of two civil engineers to the effect that the lands within the district could be effectively safeguarded against overflow by the construction of levees about the district, and the construction of a ditch to drain off the water within the district; and these lands sought to be annexed could be effectively drained by the construction of ditches without assistance from the drainage district. However, there was testimony which indicated that the construction of a levee around the original district would be unduly expensive; that the levy would cause the lands outside of the district to build up and that it would be necessary to raise the levee from time to time as the adjacent lands built up.

## OPINION.

With the exception of the claim of certain individual appellants that their lands are not subject to overflow, appellants have practically based their contentions upon various statements made by the Supreme Court in the case of Ellsberry Drainage District v. Harris,

267 Mo. 139. It is contended that the petition for extension of boundaries does not state a cause of action because it does not allege that there is some common interest between the lands in the district and those sought to be annexed, by reason whereof the improvement of the district would confer benefits upon the lands sought to be annexed. In the Ellsberry Drainage District case the Supreme Court said that the right to extend the boundaries of a drainage district so as to include other lands of like character was applicable to cases in which there is something in the character or situation of the lands to be annexed or the nature of the contemplated improvement "which would enable them to share in the benefits of the work without contributing to the costs or would otherwise make it inequitable to withhold their assistance;" that there was nothing in the law as it existed at that time which authorized the inclusion by extension of any lands not of the character entitling them to be included in its organization; that unless there was some common interest between them, by reason of which the improvement of the district would effect beneficially those of the objectors, the right did not exist. From this language appellants have concluded that the petition does not state a cause of action unless it includes the language used by the Supreme Court in this decision. We cannot agree with this contention. Section 4416 of the Laws of Missouri, 1923, p. 167 provides that the board of supervisors of the district, or the owners of a majority of the acres in any tract or tracts of swamp, wet, or overflow lands or lands subject to overflow, lying adjacent to such district, or having an outlet in common with lands in the district, shall have the right to file a petition asking that the boundary lines of the district be changed or extended so as to include such lands. There have been changes in the statute since the decision of the Ellsberry Drainage District case. However, we think that the amendments of the statute have not so far changed the general purpose of the act but what the Ellsberry Drainage District case is still authority for the rule that there must be some common interest by reason of which the improvement of the district would effect beneficially the lands of the objectors, or that the nature of the contemplated improvement would enable them to share in the benefits of the work, or it otherwise appears that it would be inequitable to withhold their assistance to justify a circuit court in extending the boundaries of the drainage district. But if the language of the statute means this, then it follows that that same language when used in the petition means the same thing. We hold that allegations in the language of the statute are sufficient to state a cause of action. Our larceny statute provides that every person who shall be convicted of feloniously stealing, taking or carrying away any money or other property of the value of $30 or more shall be guilty of a

felony. The courts hold that one who takes another's property is not guilty of larceny unless he takes the property with the intention of permanently depriving the owner thereof. That is the construction which the courts put upon the words used in the statute. Nevertheless, it is not necessary that an indictment or information allege that defendant took the property with the intention of permanently depriving the owner thereof. It is sufficient to allege that he feloniously did steal, take and carry away the property.

It is next contended that the evidence conclusively shows that the land sought to be annexed cannot be benefited by any works sought to be constructed within the original lines of the district. We cannot agree with this contention. It is true that all of the land within the district might be protected from the waters which flow from the adjacent lands by levees. But it is not the policy of the law to compel a drainage district to adopt a plan of reclamation which will obviate the necessity of extending its boundaries without regard to the cost of executing the plan. It may be that there is not a single forty acre farm within this Missouri River bottom that cannot be protected from the waters which flow down from the adjacent hills by building a wall around the farm. It might be that such a farm could not be protected without building a concrete wall of such dimension that the cost thereof would exceed the value of the farm; yet if respondents contention is sound the land owner would have no right to consider this fact in determining what plan of reclamation should be adopted. It is true that some of the land within the district would not be completely drained and reclaimed, even though all of the improvements were made which are necessary to reclaim the land which is within the original boundaries of the district without some additional improvements. It is also true that much of the land which lies without the original boundaries of the district is so situated that the owners thereof, could, if they chose, drain their own lands without cooperating with the original district. But if they did so they would benefit the lands within the original district. If they do not choose to drain their own lands, then the original district cannot drain its lands without benefiting the adjacent lands. The adjacent landowners have never seen fit to drain their own lands. As a result, the district cannot drain the land within its original boundaries except by the use of a levee which is unduly expensive, and which in the opinion of the engineer of the district, is not practicable. Since the owners of adjacent lands have not seen fit to form a district of their own and have not kept the water from flowing off of their lands into the original district, it follows that the original district may reclaim its own land by draining it and thereby necessarily draining adjacent lands. If the execution of such a plan in great part bears the burden of the reclamation of part of the

other lands without completely reclaiming them, then these lands may also be included and the extra expense incurred necessary to make such further improvements as will completely reclaim those lands. The district does not have to make a gift of its benefits to the lands which are not completely reclaimed, so that the owners of those lands may at small expense complete the job and thus get the benefit of complete reclamation, by paying a part of the expense.

It is contended, upon the authority of the Ellsberry Drainage District case, that the district as extended, could not have been originally formed without the consent of the owners of a majority of the acres; that it follows that a smaller district cannot by the process of annexation against the will of the landowners accomplish indirectly what could have been done directly. The opinion relied upon holds that this may not be done "for the mere asking," but it must appear that there is something in the character or situation of the lands to be annexed, or the nature of the contemplated improvement which would enable the lands to be annexed to share in the benefit of the work without contributing to the cost, or would otherwise make it inequitable to withhold their assistance. We have already said why we think that the evidence showed good reason for the extension.

We do not understand the contention that the district is attempting to use the method of annexation as a substitute for condemnation. It seems that appellants think that the fact that most of the improvements are to be constructed outside of the original boundaries but within the extended boundaries in some way involves taking private property for public use without just compensation. The district has power to construct improvements within and without the district. [Section 4392, Revised Statutes 1919.] And all property taken for that purpose must be condemned and paid for, whether it be within or without the district. In the Ellsberry Drainage District case the Supreme Court said that there was nothing in the drainage district law expressive of a legislative intent to provide for the annexation of swamp or overflowed lands as a substitute for their appropriation by condemnation, but this language was incident to the decision of the court that lands could not be included in a district for the sole purpose of assessing a part of the cost of the district's business and improvements against such lands unless there is some common benefit in which such lands will share. The plain terms of the statute exclude the idea that lands may be included in the district unless they will be benefited. The instant case was originally appealed to the Supreme Court and was then transferred here. No doubt the Supreme Court considered that the language used in the Ellsberry Drainage District case was a mere reason why the statutes should not be stretched and tortured by construction

1050

so as to permit lands to be subjected to the expense of an improvement without sharing in the benefits, and that therefore no constitutional question was involved.

The appellants complain that a small number of landowners originally organized a drainage district and then extended the boundaries so that the district as extended is established against the will of the majority of the landowners and of the owners of a majority of the acres. This is said to be at variance with the institutions of a free country. The principle upon which public corporations are formed is different from that upon which men are elected to public office. Our form of government requires that the members of the Legislature and the judges of the courts shall be elected by a majority vote. But the Legislature has power to create a public corporation without the consent of those whose persons or property will come under the jurisdiction of the governmental agency; and it may delegate the power to determine what property shall be included within the corporate limits of a public corporation to the courts. The minority did not rule. It was given an opportunity to establish the facts. But the court determined the boundaries of the public corporation and approved the amended plan of reclamation after ascertaining the facts. A public road is established upon the petition of twelve freeholders, without regard to the number of persons affected. But the public necessity for the road is determined from the evidence by the county court. The Legislature has power to provide that the jurisdiction of a court to establish a public road or extend the boundaries of a drainage district may be invoked by the petition of one person. The power to invoke the jurisdiction of a court is far different from the power to rule.

It is alleged that it was error to enter a decree enlarging the district "without first bringing into the cause the St. Joseph Transmission Company and the Western Union Telegraph Company." It is not claimed that the petition fails to describe the boundary lines of the tract or tracts sought to be annexed, but only that it fails to state the names of the owners of such tracts. Section 4415, Revised Statutes 1919, provides that the word "owner" as used in the drainage act shall mean the owner of the freehold estate. There are authorities to the effect that a freehold is any estate for life or of inheritance; that the word designates the term of the estate rather than the extent or value of the interest in the land, and that an easement for life or forever is a freehold estate. Section 4416, Laws of Missouri, 1923, provides that the petition to extend the boundaries of a drainage district shall describe the boundaries of the tracts to be annexed *and shall state the names of the owners* of such tracts if known, and if not known, such fact shall set out. This section also provides that the petition and all maps, profiles and reports of

the chief engineer and all records of the board of supervisors shall be deemed prima-facie evidence as to all facts therein. The section also provides that the amendments therein shall be liberally construed and shall apply to districts already organized. Section 4416A, Laws of Missouri, 1921, provides that the decree extending the boundary lines of the district may be amended or changed at any time by adding or amending the names, in which case notice must be given to each owner of land not a party to the original proceeding. Under the provisions of Section 4416A, it is obvious that the failure to insert the name of any owner does not defeat the jurisdiction of the court, but can only be urged as error if the objector establishes that such omission has affected him injuriously, for instance, by requiring him to bear an undue proportion of the expense of the proposed improvement. [State ex inf. v. Mississippi, etc., Drainage Dist., 292 Mo. l. c. 712, 713.]

In the instant case the petition purported to give the names of the owners of every tract of land to be beneficially effected within the extended boundaries. The map prepared by the chief engineer was of the same purport. Under section 4416, Laws of 1923, this made a prima-facie case that the petition contained all the names of owners, that is, freeholders, of swamp, wet and overflow lands and lands subject to overflow, lying adjacent to the district.

The objectors failed to show that either the easement of the telegraph company or of the transmission company was a freehold or that it was swamp, wet or overflow land or land subject to overflow as those words have been construed by the Supreme Court in the Ellsberry Drainage District case, to-wit, lands of such nature with some common interest with the lands within the district so that it would be equitable to include them in one drainage district upon the ground that they would thereby be benefited in common. It is easy to understand that the owner of the soil might be benefited by drainage though the owner of the right to maintain overhead wires would not. If no benefit would accrue to the easements then it was not proper to include the owners thereof, even though they owned a freehold estate in the easements. Nor is it any objection to the validity of the organization of a drainage district that lands or interests in lands are wholly within the boundaries of the district but are not included in the district. [State ex inf. v. Mississippi, etc., Drainage Dist., supra.]

It is contended that the Dungan, Kaucher, Moore and Young-Devorss and Evans lands in sections 29 and 30, the Patterson, Bancroft and Torry lands in section 31 and the Hall lands in section 6, the Griswold lands in section 4, and the Gifford lands in section 34 are not subject to overflow and should have been excluded.

The evidence is that the Dungan, Kaucher and Moore lands overflow and that one of the proposed ditches will prevent excessive

overflow on those lands. The appellants rely upon the fact that the engineer testified that he had never seen a total crop failure upon these lands. The extent of the benefit is important in determining the benefits to be assessed, but the lands should be included in the district if they are benefited at all. There is evidence that the east part of the Young-Devorss land is low, but that the west part is high and does not overflow. The objectors did not take the trouble to show how much of this land was high. Mrs. Raiser testified that the Evans land belonged to her mother. She admitted that a small part of this thirty-acre tract was subject to overflow, but said that the owners had lost no crops on account of overflow, except upon one acre. There is evidence that the waters from the Dungan, Kaucher and Moore lands crosses over the Patterson and Bancroft land into the drainage district. The Torrey land is surrounded by lands which are affirmatively shown to be overflow lands, and the elevations shown upon the map justify the finding of the court that the Torrey land overflows. There is evidence that ''Beasley's land'' overflows. The Torrey land is shown by the map to be the land of Julia Torrey, Allie Walker and Margaret Beasley.

There is evidence that part of the Hall land in Section 6 overflows, but that that part lying nearest the river does not. That part was not included in the extension. One of the engineers testified that flood waters did not affect the Griswold land because it was next to the bank of the river and high. There was no evidence to the contrary. This destroyed the prima-facie showing made by the map which this engineer himself helped to prepare. Mr. Cox testified he had seen the water standing on the Gifford land.

It is contended that the Meade, McWilliams, Ford and Gifford lands in section 27 are overflowed only by waters from the Meade and the McWilliams branches, and should therefore be excluded. These lands are overflowed by these two branches, and the water from those branches does not overflow lands within the original boundaries of the district. But the drainage of the overflow from the Easter branch is reasonably necessary to protect the lands within the original boundaries, and such drainage will be of benefit to these lands. We have already held that the district is under no obligation to partly relieve these lands so that the owners may then protect themselves at small expense from the overflow from these two small wet weather streams. If these lands must be partly relieved, then it is proper to include them in the district and to construct such additional improvements as will allow them to fully participate in the benefits of the general plan.

There is conflicting evidence as to some of the lands which we have mentioned, but in cases of this character the Supreme Court, in passing upon the evidence, has adopted the rule followed in suits

at law, whether the facts were tried by court or jury. In the case of Sibbett v. Steele, 240 Mo. 85, the court said:

"Whether the lands of objectors will be benefited, and whether they are improperly included in the district, are questions of fact which were tried out before the court upon testimony *pro* and *con.* The judgment of the trial court is supported by substantial testimony, and therefore should not be disturbed by this court."

The decree of the trial court is affirmed as to all objectors except Carl J. Griswold, and as to him the decree is reversed and remanded with directions to so amend the decree as to exclude from the district the lands of the said Carl J. Griswold lying in section 4, township 58, Rang 37 in Holt county, Missouri. *Lee, C.,* concurs.

PER CURIAM:—The foregoing opinion of BARNETT, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.