In re BIRMINGHAM DRAINAGE DISTRICT v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY et al., Plaintiffs in Error.

Division One, April 8, 1918.

1. **GOVERNMENTAL POWERS:** Distribution: **Legislative Powers Committed to Courts.** Duties which are not judicial may be performed by judicial officers unless they are clearly such as are confided by the Constitution to the legislative or executive departments of the State Government.

2. ————: ————: ————: **Drainage District.** A drainage district is a public corporation constituted by legislative authority, and may be put into effect either directly or by an appropriate designated agency. That agency may be a court, and the Legislature may make the power of that court in assessing benefits as full and final as if the powers were vested in a board of commissioners or an assessor.

3. ————: ————: ————: ————: **Appeal.** The Circuit Court Drainage Act has separated those proceedings which are purely legislative from those which are constitutionally beyond lgeislative control and require judicial action for their validity—the matter of assessing damages is judicial and from a judgment thereon an appeal lies; the construction of the improvements and most of the other proceedings are not judicial, and are such as might have been accomplished through the direct action of the Legislature and its administrative agencies, and as to them an appeal does not act as a *supersedeas.*

4. **APPEAL:** Writ of Error: **Drainage District:** Review of Benefit Assessments. The right of review in any case is purely statutory; and though under the general code either an appeal or writ of er-

In re Birmingham Drainage District.

ror is available, the Legislature may restrict the right of review to an appeal, and may confine the review in a drainage district case to questions concerning the damages assessed. An objector to the benefits charged against his property by the circuit court cannot by writ of error have the amount reduced or the assessment reviewed in the Supreme Court.

5. **WRIT OF ERROR: No Notice to Some of Parties.** In any event an appellate court cannot review the judgment of a trial court, unless it has all the parties before it who would be affected by a modification of that judgment; and if it is sought by a writ of error to review the judgment organizing a drainage district and to have the benefits charged against the property of plaintiffs in error reduced by the appellate court, all landowners in the district and all other persons whose property rights would be affected by such reduction and will not join in the writ must be given notice, according to Section 2071, Revised Statutes 1909, and if not so notified the writ must be dismissed.

Error to Clay Circuit Court.—*Hon. Frank P. Divelbiss, Judge.*

WRIT DISMISSED.

*James L. Minnis, H. J. Nelson, N. S. Brown, Fred S. Hudson, M. G. Roberts* and *H. L. Moore* for plaintiffs in error.

(1) Under the undisputed and uncontradicted facts shown in this record, the amounts severally assessed as benefits against each of the railroad companies respectively on account of the construction of the levee are so palpably and grossly excessive and out of all proportion to the decreased cost of maintenance and the increased physical efficiency of the roadbeds that the contributions in cash and the outlay of work and material exacted are, as a matter of law, confiscatory, arbitrary and constitute a flagrant abuse of the rights of property in contravention of the Fourteenth Amendment to the Federal Constitution and the provisions of the State Constitution. The same general principles of law guiding a court in determining whether damages awarded are excessive, arbitrary or unreasonable, as

a matter of law, must of necessity be applied to ascertain the excessiveness or the unreasonableness of the amounts of benefits assessed. The courts have uniformly held that the contribution exacted from the owner of realty on account of a public improvement must not exceed the actual benefit received and any assessment in excess of the actual benefit is pro tanto an unconstitutional taking of private property for public use without just compensation. In other words, the sum assessed must be in proportion to the special benefit conferred upon the owner to the property and must be limited to the amount of benefit received. Where damages from overflow to a railroad track, for example, during a period of fifty years did not exceed the sum of $750, an assessment of benefits upon such a railroad track in the sum of $18,000 in cash and $25,000 in outlay of labor and materials is nothing less than a pure case of flagrant confiscation and spoliation. 10 Am. & Eng. Ency. Law (2 Ed.), pp. 254-6, also vol. 25, p. 1172; 2 Page & Jones on Taxation by Assessment, sec. 665, p. 1139; vol. 1, sec. 78, p. 131; vol. 1, sec. 86, p. 143; vol. 1, sec. 118, pp. 197, 198, 199 and 200; Theilen v. Board of Supervisors, 160 N. W. 915; Railroad v. Board of Supervisors, 153 N. W. 110; Levee Dist. v. Dunbar, 155 S. W. 96; Realty Co. v. Granite Co., 240 U. S. 58; Drainage Dist. v. Livingston, 110 N. E. 806; Carson v. Sewerage Com. 182 U. S. 403; Moore v. Yonkers, 235 Fed. 491; Wagner v. Baltimore, 239 U. S. 220; Houck v. Drainage Dist. 239 U. S. 262, 265; White v. Tacoma, 109 Fed. 32, l. c. 34. (2) Remote, contingent, speculative and uncertain benefits are not regarded in determining the amount of local assessments. Where a railroad track has been in existence for a long period of years and credible proof is available as to the amount of damages caused by the overflow of the river to the track during that period, the amount of future benefits to the track by the erection of a levee along the river may be ascertained with almost mathematical certainty. When such facts as to damages, injury or impairment

in the past by overflow are shown by credible evidence, supplemented by Government records with definite certainty, the opinions, theories, speculations, prophesies and assumptions of expert witnesses as to future benefits should be ignored.  Unquestionably there are uncertainties where the legislation determines benefits conferred on property by such public improvements as sidewalks, sewers and street pavements by the front foot or other proper rules, but here the determination of benefits in such particular case has been delegated to a court that can and must proceed on evidence and facts, and, as the operation of physical laws in the future may be judged by their effect in the past, future benefits from the construction of a levee can be definitely determined by ascertaining the injury or damage in the past to a railroad track from an overflow which the levee is designed to prevent.  Hence, courts need not resort to speculative theories and remote contingencies. 25 Am. & Eng. Ency. Law (2 Ed.), p. 1159; Coal & Coke Co. v. Hartman, 49 C. C. A. 244, 111 Fed. 96; Drainage District v. Railroad Co., 255 Ill. 398; 1 Sedgwick on Damages (9 Ed.), sec. 170, p. 317.  (3) The court erred in refusing to allow the jury to pass upon the benefits to the three railways as well as the damage.  Hull v. River Dist., 219 Ill. 454; Joliet v. Drainage Dist., 222 Ill. 441.  (4) The court erred in assessing benefits and damages in this case for the construction of a levy because under the drainage statute under which this district was organized and the court was proceeding, the court had no jurisdiction or authority to order the construction of a levy costing $350,000 in the absence of any plans or provisions for drainage whatever. Drainage Dist. v. Railway 266 Mo. 60; Drainage Dist. v. Ackley, 192 S. W. 727.  (5) Section 3 of article 6 of the Constitution provides that the Supreme Court shall have a general superintending control over all inferior courts and shall have the power to issue writ of *habeas corpus,* mandamus, *quo warranto, certiorari* and other original remedial writs, and to hear and

determine the same. Under this provision this court may issue writs of error without legislative restrictions, and a litigant has a constitutional right to such writ and to a full review of his case. St. Louis v. Marchel, 99 Mo. 475; Jim v. State, 3 Mo. 147; Blunt v. Shepard, 1 Mo. 219; Calloway v. State, 1 Mo. 211; English v. Mullanphy, 1 Mo. 780; Tenton v. Dugal, 1 Mo. 761; State v. Thayer, 158 Mo. 36; Lynes v. State of Alabama, 5 Porter (Ala.) 236; Ex Parte Anthony, 5 Ark. 358; Walker v. Dobson, 135 Mo. 20; Densmore v. Manchester 81 Atl. (N. H.) 533; Railroad v. Railroad, 29 Wash. 491; State ex rel. v. Superior Court, 143 Pac. (Wash.) 168. (6) When a statute provides for an appeal which is limited in its scope, a citizen may not thereby be deprived of his constitutional and statutory right to a writ of error. Bowers v. Green, 2 Ill. 41; Railway v. Railway, 29 Wash. 491; State ex rel. v. Superior Court, 143 Pac. (Wash.) 168; Peck v. Hapgood, 51 Mass. 174; Day v. Laflin, 47 Mass. 280; Eppstein v. Holmes, 64 Tex. 560; Smith v. Morrow, 52 Pac. (Colo.) 1110. (7) Although condemnation proceedings are special statutory proceedings and were unknown to the common law, this court has always held that writs of error lie from final judgments in all such proceedings by virtue of the statute which provides that a writ of error lies from the final judgment or decision of the court of record in all cases. Moberly v. Lotter, 266 Mo. 457; Railway v. Railway, 100 Mo. 425; Railroad v. Fire Brick Co., 85 Mo. 332; Railroad v. Lewright, 113 Mo. 660; Lee v. Railroad, 53 Mo. 178; Drainage Dist. v. Jamison, 176 Mo. 564; State ex rel. v. Englemann, 106 Mo. 634; Railroad v. Lackland, 25 Mo. 526; Railroad v. Chrystal, 25 Mo. 544. (8) The Missouri statute (Sec. 2054, R. S. 1909) provides that writs of error upon any final judgment or decision of a circuit court in all cases are writs of right and shall issue of course. This statute did not adopt the common-law rule, but on the contrary the authority to issue writs of error are greatly extended thereby and the statute

now applies to all final decisions or judgments of the circuit court affecting property rights in whatever mode of proceedings they may be made or rendered. It includes equitable as well as common-law actions, statutory as well as common-law proceedings. It applies "in all cases" where final judgments are rendered and is broad enough to include condemnation proceedings in the establishment of drainage district. State ex rel. v. Riley, 203 Mo. 191; State ex rel. v. Bland, 189 Mo. 215; Dryden v. Swinburn, 15 W. Va. 234, 253; Hockemeyer v. Thompson, 150 Ind. 176; State v. Schneider, 47 Mo. App. 669. (9) In Missouri writs of error and appeals are concurrent remedies. One is not dependent on the other. One does not exclude the other. The only limitation is that both cannot be prosecuted at the same time. Writs of error are writs of right under section 2054 and are not affected, limited, or qualified to any extent by the provision of section 2038 or any other section of the statute granting appeals. Chinn v. Davis, 21 Mo. App. 371; Moberly v. Lotter, 266 Mo. 465; Burdick v. Life Assn., 91 Mo. App. 532; Railway v. Railroad, 94 Mo. 542; Railroad v. Fire Brick Co., 85 Mo. 322; Kroeger v. Dash, 82 Mo. App. 332.

*Haff, Meservey, German & Michaels, Martin E. Lawson* and *Beardsley & Beardsley* for defendant in error.

(1) If a writ of error does lie in a drainage district proceeding, then all persons owning property in the district must be made parties to the writ of error, or it will be dismissed. R. S. 1909, sec. 2058, 2059; State ex rel. Holden v. Gill, 84 Mo. 248; Kansas City v. Woerishoeffer, 249 Mo. 1; Drainage Dist. v. Railroad Co., 266 Mo. 60; Drainage Dist. v. Foard, 268 Mo. 310; Smith v. Moseley, 234 Mo. 486. (2) The action of the trial court with respect to damages and benefits was justified by the evidence and the law. Railway v. Hamilton County, 171 Ia. 741; Levee Dist. v. Dunbar, 107 Ark.

285. (3) It was for the court and not the jury to pass upon the assessment of benefits. Kansas City v. Woerisheoffer, 294 Mo. 23; Railroad v. Pickett, 25 Mo. 539; In re Drainage Dist. v. Richardson, 237 Mo. 49; Cooley on Taxation (3 Ed.), p. 1188; Lewis on Eminent Domain (3 Ed.), secs. 4, 5, 69 and 633. (4) Section 31 of the Act of March 24, 1913, requiring the railways to raise their embankments and bridges at their own expense is constitutional, and such expense is not damage. In re Drainage Dist. v. Richardson, 237 Mo. 49; Laws 1913, p. 251; Railway v. Levee Dist., 207 Fed. 338; Railway v. Illinois, 200 U. S. 561; Railway v. Board of Supervisors, 182 Fed, 291; Hahn v. Railway, 113 Ark. 537; Cubbins v. River Com., 204 Fed. 299; Railway v. Minneapolis, 232 U. S. 430; State ex rel. v. Drainage Dist., 252 Mo. 345; State ex rel. v. Drainage Dist., 269 Mo. 444. (5) The Act of March 24, 1913, provides its own code of procedure; it provides for a review of proceedings only by appeal and the general provisions of the Civil Code of Procedure for writs of error do not apply to such special statutory proceedings, and therefore the motion to quash the writ of error must be sustained. Sec. 16, Laws 1913, p. 241; Buschling v. Ackley, 192 S. W. 727. (6) Appeal did not exist at common law and is of purely statutory origin. State v. Thayer, 158 Mo. 36, 53. The method of review at common law was by writ of error, but, of course, it could be sued out only to correct errors in common-law proceedings. 2 Cyc. 508 et seq.; Railroad v. Green's Admr., 34 Mo. 159. (7) A writ of error is a new suit begun in a higher court to review the record proceedings of an inferior court. Turner v. Edmondson, 210 Mo. 411, 419; Macklin v. Allenburg, 100 Mo. 337, 343. So that for the right to a writ of error to exist here, there must be a right to institute a new suit in the higher court, but section 16 of the Drainage Act provides that "any person may appeal from the judgment of the court," and an appeal is not a new suit, but a continuation of the proceeding already instituted. Macklin v. Allenburg, 100

Mo. 337. It was the intention of the Legislature, in framing the drainage act, to provide for one single continuous proceeding and that such proceeding should at all times be expedited. This alone clearly negatives any idea that the Legislature intended that a writ of error could lie in a drainage case. Hall v. Thade, 75 Ill. 173; Young v. Hudson, 99 Mo. 102; Duncan v. Forgey, 25 Mo. App. 310; Drainage District No. 4 v. Wabash Railroad Company, 216 Mo. 715.

BROWN, C.—This is a proceeding in the circuit court for Clay County for the assessment of benefits accruing to property situated in the Birmingham Drainage District in that county and to assess damages to property to be taken or injuriously affected in the construction of its works.

The proceeding for incorporation of the district was instituted September 22, 1913, under the provisions of the act of the General Assembly approved March 24, 1913, pertaining to the "Organization of Drainage Districts by Circuit Courts" (Laws 1913, p. 232), by the filing of the articles of association and giving the notice required by the act. The articles were signed by eighteen persons and corporations owning more than one-half in acreage of the 5390 acres of land in the proposed district. A formal decree of incorporation was entered by the court, and was brought to this court by appeal, where it was affirmed. [In Re Birmingham Drainage District, 266 Mo. 60.]

Supervisors were thereupon elected and such proceedings taken that benefits and damages were assessed, the former amounting to $572,376.27 and the latter to $25,341.20. The estimated cost of the work, including the damages, was $350,657, and the court entered its decree accordingly.

The Chicago, Burlington & Quincy Railroad Company, Chicago, Milwaukee & St. Paul Railway Company, and the Wabash Railway Company, appealed from the judgment to this court on April 1, 1916. In March, 1917, the appeal was, by leave of the court, dismissed,

and the appellants sued out this writ of error, in which seven other landowners in the district joined.

It is sufficiently accurate for the purpose of this statement to say that more than one hundred landowners against whose property benefits were assessed, failed to file exceptions to the report of the commissioners, and were not notified of the application for or issue of this writ of error, and have made no appearance here.

Upon the return of the writ the Birmingham Drainage District, appearing for that purpose only, filed its motion to quash it on the ground that error does not lie in a case of this character. This motion was by the court taken with the case and is now up for consideration.

The benefits assessed against the property of the three railway companies respectively, as modified by the court, were as follows: The Chicago, Burlington & Quincy, $18,000; Chicago, Milwaukee & St. Paul, $7000; Wabash, $71,000. The decree states that in arriving at those amounts the court took into consideration, and deducted from the actual gross benefit found, the estimated cost necessary to be incurred by each railway company in conforming its tracks to the works of the district; which amounted, as there was evidence tending to show, in the case of the Wabash, to $42,000; the C. B. & Q., $25,000; and the C., M. & St. Paul, $17,000. The damages awarded by the jury to each railway company were confined to land actually taken for or damaged by the work, and amounted to $250 each. The court refused the request of the companies to submit the question of benefits to a jury.

The plaintiffs in error, in their brief, state the issues as follows:

"The principal errors complained of, stated in a broad general way, are:

"The court refused to submit the question of benefits accruing to the corporate defendants, as well as the damages which would be caused to them, to a jury.

"The court's assessment of benefits is grossly excessive under the evidence as well as under the law —that is, the assessment of benefits made by the court is not sustained by any evidence in the case, unless measured by the rule laid down by the statutes, that the benefits shall be assessed at the 'increased physical efficiency and decreased cost of maintenance.' That if such statutory rule is so construed as to justify the result arrived at by the court, then the statute itself would be void as a taking of property without due process of law, and a denial of equal protection of the law. The claim, as to this, is that the statute is void for these reasons, even when correctly construed, but that construed and applied as the court has applied it in this case, as shown both by results and declarations of law, then the statute is clearly and unquestionably subject to the foregoing objections."

I. In the gateway which leads to the merits of this case stands the motion to quash the writ of error which is responsible for its presence in this court. That the question so presented is not without difficulty

**Writ of Error.** under our Constitution and statutes in their application to this proceeding is evident upon the most casual examination. That this difficulty was fully appreciated by the plaintiffs in error, and that they dismissed the appeal upon which the matter was pending in this court and substituted this writ for the purpose of giving us a jurisdiction which we did not have and could not exercise by virtue of the appeal, is frankly conceded in their printed argument upon this motion. They refer to our decision in In re Mississippi and Fox River Drainage District; Buschling v. Ackley, 270 Mo. 157, as holding that an appeal allowed in a proceeding under the Act of 1913 brought up two questions only: "First, whether just compensation has been allowed for property appropriated; and, second, whether proper damages have been allowed for property prejudicially affected by the improvement." They de-

scribe the language used in the act as a trap which "furnishes a very plain and evident reason why the appeals were dismissed, and this attempt made by writ of error to obtain a real review of the decision." We have noted this phase of the argument because it authorizes us to assume without further discussion which could only lead to the same result, that only a limited appeal is authorized by the statute, while a broader jurisdiction is invoked by the writ of error. Whether this is based upon the theory that whenever the Legislature invokes the assistance of a court in the performance of its governmental duties by a special proceeding of any character whatever, its final action is brought under the yoke of Section 2054 of the General Code (R. S. 1909) notwithstanding the legislative desire to the contrary, or upon the provisions of section three of article six of the State Constitution giving this court "a general superintending control over all inferior courts" does not so plainly appear.

II.   Although article three of the State Constitution, while distributing the powers of the State Government into three distinct departments—the legislative, executive and judicial—forbids any person or collection of persons charged with the exercise of powers properly belonging to one of those departments to exercise any power properly belonging to either of the others, we have held (State ex rel. v. Higgins, 125 Mo. 364, 368) that duties which are not judicial may be performed by judicial officers unless they are clearly such as are confined by the Constitution itself to the executive or legislative department. This literal and altogether reasonable construction is founded in the necessities inherent in all governments. While the power to indicate what the laws shall be is purely legislative, the power to authoritatively determine what they are is judicial, and these are frequently so interlocked as to suggest the assistance of the judiciary in giving practical effect to a legislative enactment. The case before

*Court as Legislative Agent.*

us is an excellent illustration of this principle, because
it includes in the accomplishment of the single result
contemplated by the Legislature the performance of
both legislative and judicial functions distinctly sepa-
rated by the Constitution, and each definitely assigned
to. its own magistracy. To accomplish the single pur-
pose of putting in action a drainage district required
not only the enactment of a statute fixing the extent,
purpose and general powers of the district, which is a
purely legislative function, but the appropriotion of
private property for such purpose and determining the
damage therefor by jury trial, which are distinctly judi-
cial functions. Between these lies "no man's land,"
a region of action unclassified by the terms of the Con-
stitution.

That these districts are public corporations which
may only be constituted by legislative authority exer-
cised through an enactment of the General Assembly
and put into effect either directly or by appropriate
agencies designated by legislative authority, has been
too often held by this court to be open to argument.
[Egyptian Levee Co. v. Hardin, 27 Mo. 495; Columbia
Bottom Levee Co. v. Meier, 39 Mo. 53; Morrison v. Mor-
ey, 146 Mo. 543; State ex rel. v. Drainage District, 192
Mo. 517; Mound City Land & Stock Co. v. Miller, 170 Mo.
240; State ex rel. v. Taylor, 224 Mo. 393; Squaw Creek
Drainage District v. Turney, 235 Mo. 80; Little River
Drainage District v. Railroad, 236 Mo. 94; Houck v.
Drainage District, 248 Mo. 373; State ex rel. v. Foard,
268 Mo. 300.] And these drainage districts, when so
formed, exercise the granted powers within their ter-
ritorial jurisdiction as fully, and by the same authority,
as municipal corporations of the State exercise the
powers vested by their charters. [Houck v. Little River
Drainage District, supra; Same case, 239 U. S. 254,
262.] Among other powers they may exercise that of
taxation, and this power, so far as it may be expressly
granted for the purposes of their incorporation, is only
limited by the power of the Legislature which grants
it.

The assessment and levy of taxes is a legislative function to be exercised in such manner and by such agencies as the Legislature may designate within the limits of its power. In the assessment and levy of taxes for street improvements it has generally fixed rules resting substantially on the frontage of lots benefited by the improvement, while in this case it has undertaken to secure equality by an assessment of the actual value of the benefits accruing to the property to be subjected to the tax.    As we said in the Houck case: "In selecting the subjects of this class of taxation, and in the assessment and levy of the taxes, it is not expected that even approximate perfection will be attained. The discretion of the Legislature, subject only to well-defined constitutional restrictions, must be full and untramelled; otherwise revenue laws would never pass the region of judicial debate into the region of execution." The Supreme Court of the United States, in the same case (1. c. 265), said: "The State in its discretion may lay such assessments in proportion to position, frontage, area, market value, or to benefits estimated by commissioners," and cites numerous authorities. In the Egyptian Levee case this court through Judge NAPTON, said: "In every form of taxation, whether general or local, it is certainly desirable and proper that the burden should be distributed as near as may be in proportion to the benefit derived; and constitutional injunctions and restrictions, where they have been attempted on this subject at all, are designed to promote this end.   But where there is an absence of constitutional provisions, it is not in the power of the courts to enforce any fancied scheme of equality seeming to them more just than the one adopted by the Legislature. The latter department of government is wisely entrusted with the entire control of this subject; and if practical injustice is done, the remedy is in the hands of the people.   Equality of taxation may, however, be regarded as one of those Utopian visions, which neither philosopher nor legislator has ever yet realized."

Upon principle as well as upon authority the doctrine is well settled in this State that the Legislature might itself from its own information fix the boundaries of an incorporated drainage district; and also fix the amount of special assessments for the performance of the work, placing the same at a level rate founded upon a unit of drainage area or upon a proceeding to ascertain the actual benefit accrued to each particular tract; and that it might also delegate any or all these powers to an appropriate agency to be chosen or created by it. There is no more reason to say that it must call to its assistance a court of general jurisdiction in such cases than that it should require the judgment of a court of general jurisdiction in applying the frontage system as a basis for taxation for street improvements or in the assessment of lands for general taxation. In either case, it appoints its own agent and if that agent be a court it may make the power of that court as full and final as if it were vested in a board of commissioners or an assessor.

All these things were evidently in the mind of the Legislature in the preparation of this law. Its initial purpose was evidently to provide an agency with ample facilities for the conduct of the necessary inquiry, including the legal knowledge and judicial discrimination requisite to a clear understanding of the legislative purpose, and to provide ample notice to all persons who might be affected by the result of the proceeding. For this duty it selected the circuit courts of those counties in which the property to be assessed or condemned or any part thereof should be situated. We see no reason to find fault with this selection. That tribunal was necessarily the one in which proceedings must be had for the appropriation of lands and assessment of damages on account of the property to be taken or injuriously affected in the execution of the plans of the corporation. The payment of these damages was one of the purposes for which benefits must be assessed, and the amount of which was inseparably interwoven

with the tax upon which their payment would depend. Their assessment involved, under the Constitution, a judicial question as to the public use, as well as a trial by jury, which is an instrument of judicial inquiry.

It was not only natural, but it seems to us to have been wise and prudent that the Legislature should, in the interest of facilitating its work, have divided those proceedings which were purely legislative in their nature from those that were constitutionally beyond its control and required judicial action for their validity, and this is exactly what it did. In determining whether or not the order of incorporation should be made the court was required to proceed "in a summary manner;" that is to say, forthwith and without regard to the established course of legal proceeding, disregarding everything but the sufficiency and truth of the articles of association before it, and, should it find that the district should be incorporated, enter its finding and decree accordingly. The district then organized itself by the election of supervisors, their organization and appointment of officers for the preparation of the plan of reclamation and securing the appointment by the court of commissioners to appraise the land required for rights of way, holding basins and other drainage works, and to assess benefits and damages accruing to all lands in the district by reason of the execution of the plan. [Sec. 14.] The same section provides that the public highway, railroad and other rights of way, roadways, railroads and other property, shall be assessed according to the increased efficiency and decreased maintenance cost of roadways by reason of the protection to be derived from the proposed works and improvements. Upon the coming in of this report the clerk of the circuit court is required to give public notice of that fact and "the drainage district or any owner of land or other property in said district" might then file exceptions to the report "or to any assessment for either benefits or damages," and the circuit court is required to hear and determine the same

"in a summary manner so as to carry out liberally the purposes and needs of the district," and may amend or modify the report, and if it shall appear that the estimated cost of constructing the improvement is less than the benefits against the land and other property in the district the court shall approve it, as so modified and amended, and condemn the lands shown by the report to be needed for rights of way, holding basins and material, following as nearly as possible the appropriation of land for telegraph, telephone and railroad rights of way. Then follows the following provision: "Any person may appeal from the judgment of the court, and upon such appeal there may be determined either or both of the following questions: First, whether just compensation has been allowed for property appropriated; and, second, whether proper damages have been allowed for property prejudicially affected by the improvements." [Sec. 16.] Section 36 provides that no appeal taken under the act should operate as a *supersedeas*.

It will be seen that the act in question distinctly divides the duties of the court into two separate parts. The first of these is the examination of the report of the commissioners in the light of all objections made thereto, for the purpose of ascertaining the practicability of the scheme of reclamation. This depended entirely upon whether or not it would pay in benefits for its own cost; otherwise, it would have no function either in justice or reason and the entire plan of paying for the benefits it might confer from the sum of such benefits would fail, because they were not worth the price. This made the ascertainment of the expected benefits the primary subject of the inquiry. The next was the ascertainment of the cost of the work which must be paid for out of this fund, including the amount which would have to be paid as damages for lands taken and injuriously affected. This also must, to facilitate the public improvement, be ascertained in a summary manner. All these matters, excepting the assessment of damages, were legislative in

their character and might have been accomplished through the direct action of the Legislature and its administrative agencies. [Houck v. Drainage District, supra.] The condemnation of property for public use is made a judicial question, and the assessment of damages requires, if the parties desire it, a trial which can only be had in a judicial tribunal. The continued existence and functions of the corporation which had already been created depended upon the sufficiency of the fund for the payment of the cost, of which the damages assessed were, in this case, only an insignificant part, while the benefits were ample. An appeal which would only effect the element of damages would not, therefore, necessarily delay or render dangerous the prosecution of the work, while an appeal or other review going to the assessment of benefits might destroy the corporation. The design of the Legislature to avoid such a dilemma is evident on the face of the act, both in the provision limiting the appeal to the question of damages and in the provision that it should not "be permitted to act as a *supersedeas* or to delay any action or the prosecution of any work begun under the provisions of this law." The question is not therefore one of interpretation for the purpose of ascertaining the legislative will, but whether there is any rule of law to prevent us from giving effect to this plain expression of it.

We fail to see any constitutional or other reason why the intention of the Legislature, evident upon the face of this act, to confine our right of review in these cases to the assessment of damages upon appeal taken within the time provided by statute, should not be respected. The right of review in any case is purely statutory and may, in cases coming within the purview of those provisions of the code authorizing appeals and writs of error, be made available in either mode. The right to enact these statutes includes the right to repeal or modify them or limit their application in any manner not inconsistent with some provision of the Constitution limiting the legislative power in that re-

spect. In special proceedings *quasi*-judicial in their nature like the one before us and providing affirmatively for a limited review, we see no reason why the legislative right should be extended beyond its terms, either with respect to its extent or the mode prescribed by the Legislature for its exercise. As to the application of the code provisions with respect to appeals and writs of error in special proceedings in which no provision is made for review we express no opinion.

III. This proceeding was, in substance, provided for the purpose of *forming* and *capitalizing* a public corporation for a public purpose. While private corporations are capitalized by voluntary contribution of funds voluntarily contributed and transferred to the corporation to be owned and managed by it for the use in the prosecution of the private enterprise, the fund in this case was to be raised by assessment of "benefits" against the unwilling as well as the wiling, and the principal object of the proceeding in the circuit court was to fix the amount which each person having the statutory interest must contribute to the funds for furtherance of that interest in the enterprise. All persons and corporations subject to this forced contribution were, by the terms of the act, entitled to notice of the proceeding by which they were to be bound. The judgment to be rendered was an entirety, fixing the amount of the enforced contribution on each and could not be extinguished or modified as to one without affecting the interests of all. It might dissolve the corporation by leaving it without funds for the prosecution of the enterprise, or it might lessen the amount to be contributed by some at the expense of all the others. The corporation itself occupied, to a great extent, the position of a by-stander waiting the result of a contest among the property-holders of the district as to how much each should be held liable to contribute in the common cause, and prepared to administer the fund should it be raised. If, after the final judgment of the circuit court which settled this controversy,

*Writ of Error: Notice.*

there was to be a review of the proceeding in this court, all the satisfied would be arrayed against the dissatisfied, and would be entitled to notice and to appear and assert their rights. It seems absurd to say, as intimated by the plaintiffs in error, that the corporation formed by the tentative decree should become the representative of either group of contestants in a proceeding in this court to reverse or modify the decree which fixed their rights as between themselves. If this court is to be substituted for the court to which the Legislature had delegated the power to decide these issues it must of course have the same parties before it that were before the circuit court in the inquiry in which the alleged error was committed.

These parties were all here upon the three appeals which were dismissed to make way for this writ. When these appeals were taken at the term during which the case was tried, they came here upon the same notice which brought them into the circuit court for the purpose of that inquiry. With the dismissal of the appeals their duty of attendance ceased. If a writ of error should still lie under the provisions of the general code they might come back as plaintiffs in error under the provisions of Sections 2054 and 2058, Revised Statutes 1909, which require that all persons against whom any judgment shall have been recovered shall join in the writ unless otherwise provided, or as defendants in error under the terms prescribed in Section 2071, which requires notice in writing to be served on them twenty days before the return day of the writ. It is not necessary that we should classify these parties with either group. The Legislature no doubt took the difficulty of doing this into consideration, among other things, in providing the limited remedy by appeal, but whether all these hundred or more parties should be made plaintiffs or defendants there has been no attempt in this case to bring them in by notice in either capacity and for this reason alone the writ should either be "quashed" as provided in Section 2058 or "dismissed" as provided in Section 2071.

For the reasons we have stated we think the writ of error should be dismissed, which is accordingly done.

PER CURIAM:—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All of the judges concur; *Bond, P. J.,* in the result only.