BINNEY PEATMAN, ADMX., RESPONDENT, v. WORTHINGTON DRAINAGE DISTRICT, APPELLANT.—176 S. W. (2d) 539.

Kansas City Court of Appeals.   November 8, 1943.

66

*E. M. Jayne* for appellant.

*L. F. Cottey* and *Allen Rolston* for respondent.

BOYER, C.—The above case was instituted in the name of Clarence A. Peatman, plaintiff, v. Worthington Drainage District, defendant. After judgment in favor of plaintiff there was an appeal to the Supreme Court and the case was transferred here on jurisdictional grounds. [Peatman v. Worthington Drainage Dist., 168 S. W. (2d) 57.] Pending said appeal the plaintiff died and thereafter, by stipulation of the parties, the case was revived in the name of Binney Peatman, Admx., plaintiff-respondent.

The issues in the case were framed in the following manner: The petition alleges that plaintiff owns certain described lands; that defendant is, a public corporation and claims some lien upon or interest in said lands, adverse to plaintiff, and prays the court for its judgment and decree that plaintiff is the fee simple owner of the lands and that defendant does not have any lien upon or interest in the lands and that it be barred, enjoined and restrained from asserting any right or interest therein. The petition was filed in the Circuit Court of Schuyler County August 16, 1938, and upon a change of venue being granted the case was transferred to the Circuit Court of Macon County.

The answer, *inter alia*, alleges the corporate character of defendant as a drainage district duly organized under Article 1, Chapter 64, Revised Statutes of Missouri, 1929, and that all the land described in plaintiff's petition, except ten acres, lie within the boundaries of defendant's district; and in effect alleges that all of plaintiff's lands, except the ten-acre tract mentioned, had been brought into the district by a proceeding for the extension of boundaries duly and legally determined, and by a subsequent judgment of the Circuit Court of Schuyler County rendered January 6, 1934, were duly and legally found to have been benefited by defendant's plan of reclamation and were duly and legally assessed benefits in the total sum of $1575 as a drainage tax in favor of defendant, and that the matters at issue now in this cause were at issue in said court between defendant and plaintiff herein, and pleads "said judgment is a final adjudication against plaintiff herein, and pleads the same in defense and in bar to any contention plaintiff may now make otherwise," and prayed judgment of the court that all the lands described in plaintiff's petition, except the ten-acre tract, were encumbered with a lien for drainage tax purposes to the extent of the benefits assessed against same.

The reply denies all allegations of the answer, and by an extended recital alleges many facts as a basis for the charge that plaintiff's land was impropery brought into the district and improperly and illegally charged with assessment of benefits, and that the judgments incorporating plaintiff's land in the district and assessing benefits were void; and further alleges that by reason of all the facts set forth the Circuit Court of Schuyler County had no jurisdiction or authority to assess benefits against plaintiff's land and prayed the court to declare such judgments referred to to be void, and for general relief. The facts so alleged in the reply are not set forth here because it appears that the controlling facts upon which respondent relies are admitted in an agreed statement of facts submitted to the trial court.

Upon trial by the court the decree was for plaintiff, and recites that the court finds the issues for plaintiff; that plaintiff is the owner in fee of the premises described in the petition and describes the land; that "the court further finds that defendant does not have any right, title,

estate, interest, lien or encumbrance in, on or to said lands or any part thereof, and in particular the court finds that defendant does not have any lien or encumbrances on said lands or any part thereof for any drainage taxes or other drainage purposes.'' The decree was in accordance with said finding, and further provided that defendant be enjoined and restrained from asserting or attempting in any manner to enforce any lien or claim for any drainage taxes or other drainage purposes.

The motions of defendant for a new trial and in arrest of judgment were overruled and upon application an appeal was allowed to the Supreme Court.

The parties are in practical agreement upon the facts. The bill of exceptions contains prolonged statements of respective counsel pertaining to the facts and issues of the case, an agreed statement of facts, and brief testimony of three witnesses. From the evidence thus offered it appears that the Worthington Drainage district was organized some time in 1928 under provisions of the statutes similar to Article 1, Chapter 64, Revised Statutes, 1929, by a judgment of the Circuit Court of Schuyler County; that thereafter officers and agents of the district were elected and appointed; that plans for reclamation were prepared and filed; that assessment of benefits and damages that would result from putting into effect the plan of reclamation was authorized and made; that the work necessary to complete the plan of reclamation was done; taxes levied on the lands within the boundaries of the district; bonds issued for the cost of construction and completion of all the work contemplated; that a drainage ditch was constructed, laterals and levees completed and the plan of reclamation fully and completely carried out. Plaintiff's land was not then included within the boundaries of the district.

Thereafter, and about June 22, 1931, the board of supervisors filed their petition in the Circuit Court of Schuyler County for a decree extending the boundaries of said district so as to include the land of plaintiff and that of others. The petition for such extension is shown in In Re Montgomery et al., 55 S. W. (2d) 1017, et seq. Plaintiff was a non-resident and had no actual knowledge of the proceeding, but was notified by publication as the statute requires. No objections were filed on his behalf. A number of other parties whose lands were sought to be included in the extended area of the district filed objections, and their objections were sustained. The court rendered a judgment extending the boundaries of the district to include only the lands of the parties who had not filed objections. From this judgment the defendant appealed to this court and the judgment was affirmed in the case above cited. Thereafter defendant on March 24, 1933, filed in the Circuit Court of Schuyler County its petition for the appointment of commissioners ''to assess benefits and damages accruing to all lands included in the district by the decree extending the

boundary thereof and other property therein, as by statute in such cases made and provided.'' Commissioners were appointed by order of the court and filed their report April 21, 1933, and notice of said report was given by publication. The Commissioners reported benefit to the land of plaintiff in the sum of $1575, and the report was approved January 6, 1934. All of such proceedings are shown by exhibits attached to the stipulation of facts.

It was further agreed that plaintiff owned the land; that he was notified of the proceedings by constructive service and publication only in the statutory manner, and that the judgment, or purported judgment, extending the boundaries of the district was as to plaintiff taken by default. It was agreed that at no time before or after the institution of such action to extend the boundaries of the district was any other or further plan of reclamation or improvement adopted and that no additions, extensions or improvements were made to the original and completed plans at any time after the beginning of the proceedings to extend the boundaries of the district; that no map or profile was even filed with the Circuit Court, or any pleading or petition proposing any enlargement, extension or addition of the improvements to be made; that defendant did not at any time after the filing of said petition do any work towards making any extension or addition to any drains, channels or levees or any improvements to the plan of reclamation completed and adopted as aforesaid, and that there has been no change in the amount of the bonded indebtedness of the defendant district.

It was further agreed that long prior to the creation of defendant district there had been created in Schuyler County by orders of court another district duly organized under the statute known as the Chariton Drainage District Company, in which plaintiff's lands were located; that said Chariton Drainage District had long prior to the organization of the defendant constructed and fully completed its plan of reclamation and that such work had been fully paid for by assessment on the lands within the boundaries of said district, but that no benefits had been assessed or collected against the lands of plaintiff.

It further appears that the northern boundary of the Worthington Drainage District was adjacent to the land of plaintiff and that a public road extended between the district and plaintiff's land; that the Worthington Drainage District, as a part of its original construction in its drainage and reclamation plan, built a drain along the south side of plaintiff's land and also constructed a lateral which extended ''about a half quarter up into the Peatman land'' to a lake located thereon. Testimony of defendant's witnesses was offered and received, over the objection of plaintiff, to the effect that plaintiff's land was benefited by such construction. It does not appear by what authority or under what conditions defendant built the lateral drain

into plaintiff's land, but it was ·shown by defendant's witnesses that it was done as a part of the original plan of reclamation and was built in 1928 or 1929. In reference to the testimony offered by defendant tending to prove that plaintiff's land was benefited by the original plan of construction the court announced that the testimony would be heard, but that it did not mean that the court was committed to the theory or against the theory that benefits derived from the original plan of drainage could be afterwards assessed as benefits against the land when the boundaries were extended to include it. The various exhibits attached to the stipulation will be referred to as occasion may require in a consideration of the points raised on appeal.

While the judgment approving the report of the commissioners assessing benefits against plaintiff's land was rendered January 6, 1934, there was no installment of taxes against plaintiff's land certified to the collector of Schuyler County until November, 1940, more than two years after the institution of this action by plaintiff.

Appellant contends that the decree of the trial court was erroneous and for the wrong party because the plea of *res judicata* was sustained by the admissions and proof in the case, ''and the former adjudication deprived the trial court of jurisdiction to inquire into the merits of the matters concluded by that adjudication''; that all necessary steps had been taken to create a lien in favor of appellant; that the contentions of respondent are barred by the judgment approving the assessment of benefits against his land because he had his day in court in that proceeding and could have made the same contentions there that are made here.

Respondent contends that the judgment extending the boundaries of the district, the assessment of benefits, and the judgment approving such assessment are all *coram non judice* and void because not supported by the pleadings or the required procedure and, in effect, that the court had no jurisdiction or power to render said judgments or to tax plaintiff's land. If any one of such contentions is sound the decree of the trial court that defendant has no right of lien upon plaintiff's land should be sustained.

Respondent's first contention that the petition to extend the boundaries of the district did not state facts sufficient to authorize the judgment in that behalf is found to be untenable. The board of supervisors of the drainage district filed its petition for an extension of boundaries and in it alleged ''that the lands hereinafter described are all swamp, wet and overflow lands, and lands subject to overflow, lying adjacent to said district, and having an outlet in common with the lands in said district, and your petitioners are asking under the provisions of Section 10784 of Article 1, Chapter 64, Revised Statutes of Missouri, 1929, that the boundary lines of said district be changed and extended so as to annex and include such lands.'' The criticism of the petition is that it fails to state any reason why the

extension is sought or any plan or purpose of reclaiming the lands in question, and is therefore insufficient to sustain the judgment authorizing the extension of the boundaries. Such criticism cannot be sustained in view of the express provisions of the statute, Section 10784, in reference to the filing of a petition and its contents. It provides that the board of supervisors may file a petition asking that the boundary lines of the district be changed or extended so as to annex and include swamp, wet or overflow lands or lands subject to overflow, lying adjacent to such district, or having an outlet in common with lands in the district; that "said petition shall describe the boundary lines of the tract or tracts sought to be annexed and state the names of the owners of such tracts together with descriptions of tracts owned by each." After hearing objections to such petition the same section further provides that, "the court shall annex all lands and other property described in the petition that are found to be swamp, wet or overflow lands, or lands subject to overflow, or lands having an outlet in common with lands in the district." The petition stated every fact which the court was required to find and conforms to the requirements of the statute. Such a petition need not state what improvements were proposed to be made upon the land sought to be included in the district. The method of improvement was a matter to be settled in a subsequent proceeding, as clearly contemplated and provided for by the statute. The petition was sufficient. [Gossett-Warner Drainage Dist. v. Griswold, 16 S. W. (2d) 691.] What is said in the case of Little River Drainage District v. Railroad, 236 Mo. 94, in reference to the sufficiency of a petition for the organization of a district, is applicable here and is authority for the conclusion above stated. The judgment extending the boundaries of the district was not a void judgment for the reason assigned by respondent.

After the termination of litigation in the extension proceeding the board of supervisors petitioned the court in charge of the case to appoint commissioners "to assess benefits and damages accruing to all lands included in the district by the decree extending the boundary thereof and other property therein, as by statutes in such cases made and provided." Pursuant to such petition commissioners were appointed and made their report assessing benefits to variously described tracts of plaintiff's land which amounted in all to $1575. Upon consideration of said report the court found "that benefits have accrued to the respective tracts of land so included in the boundaries of the district as hereinafter set forth." The court found that the commissioners' report should be in all things affirmed and adjudged that said report be approved and that the benefits be charged and assessed against the respective tracts of land according to the report of the commissioners.

The decisive questions in this appeal pertain to the validity of the procedure adopted by the supervisors of the district to tax plaintiff's

land, and the efficacy of the judgment approving the report of the commissioners assessing benefits to sustain the plan of *res judicata.* It is respondent's position that no benefits could legally be assessed against his land in the absence of a strict compliance by the district with the procedure provided for and contemplated by the applicable statutes, and that such requirements were met in that no plan of reclamation ever was adopted to drain or improve plaintiff's land after the extension of the district; that there never was any change, alteration or extension of any previous plan of reclamation proposed or adopted to drain or reclaim his land, and no work done in that behalf after his land was brought into the district; that there was no basis upon which commissioners could appraise benefits; that no benefits could be assessed for any improvement of the land before it was brought into the district; that the purport of the petition for the appointment of commissioners to assess benefits was for an assessment of benefits *to accrue in the future*; that the finding of the court approving the report of the commissioners was that benefits *had accrued,* and that the judgment is void for all of the reasons stated and is not available to support the plea of *res judicata* as appellant contends.

Appellant insists that all necessary steps were taken to create a lien in its favor, and taken the position "that a drainage district can assess benefits to lands which it has included in its boundaries without building any additional ditches," and that after having done so the determination is final and cannot be inquired into in a collateral proceeding.

An examination of the various sections of the law applicable to this case will determine whether all necessary steps had been taken by the district to create a lien on plaintiff's land. All sections referred to are contained in Article 1, Chapter 64 of the Revised Statutes of 1929.

Section 10784 provides the method by which the boundary lines of a drainage district may be extended, the required procedure incident thereto, and the method of procedure thereafter. The required notice of the filing of the petition "shall state the purpose of the petition, that the lands will be rendered liable to taxation to pay the costs of making and maintaining the improvements found necessary to drain and reclaim said lands"; . . . "after such extension or extensions have been made, the board of supervisors of the district shall proceed to reclaim the lands and other property in the district as enlarged, by either constructing and putting into force or completing the improvements set out in 'the plan for reclamation' already adopted or to be adopted, or by formulating and adopting enlargements, additions and extensions to drains, channels, levees or other improvements, in the plan already adopted, and thereafter the same shall be proceeded with in the same manner or as nearly as possible, as provided by Sec-

tion 10750 and subsequent sections of Chapter 64, Revised Statutes 1929.''

Section 10750 provides for a report by the engineer to the board of supervisors which shall contain a plan for draining, leveeing and reclaiming the lands and property described.

Section 10751 provides for the adoption by the board of supervisors of a plan for draining, leveeing or reclaiming such lands and other property from overflow or damage by water, and it shall after such adoption be known and designated as ''the plan for reclamation,'' and become a part of the records of the district.

Section 10753 requires that a certified copy of ''the plan for reclamation'' be transmitted to the clerk of the Circuit Court organizing the drainage district, and at the same time the board of supervisors shall file with said clerk a petition asking the judge to appoint commissioners to appraise the land within and without said district to be acquired for rights of way, holding basins and other drainage works of the district, and to assess benefits and damages accruing to all lands in the district and other property by reason of the execution of ''the plan for reclamation.'' When the commissioners are appointed it becomes the duty of the secretary of the board, under Section 10754, to attend their meetings and to furnish information to said commissioners in reference to all land that will be affected by carrying out and putting into force ''the plan for reclamation'' and said secretary shall also furnish said commissioners a copy of ''the plan for reclamation'' with maps and profiles in his office.

Section 10755, in defining the duties of the commissioners, provides that they shall assess the amount of benefits and the amount of damages, if any, that *will accrue* to each governmental lot or tract of land from carrying out and putting into effect ''the plan for reclamation,''. and they shall assess only such benefits as will be derived from the construction of the works and improvements set out in ''the plan for reclamation.'' Subsequent sections provide for the giving of notice of the report of the commissioners and for the confirmation of the report as made or as modified, and for the filing with the county recorder of a description of lands with the assessed benefits and the decree and judgment of the court. After that is done, by authority of Section 10759, the board of supervisors may levy a tax of such portion of said benefits on all lands and other property in the district to which benefits have been assessed ''as may be found necessary by the board of supervisors to pay the cost of the proposed works and improvements as shown in said plan for reclamation.''

Under the admitted facts in this case the district through its board of supervisors proceeded to tax plaintiff's land without any attempt to comply with the express provisions of the law stating what steps should be taken and how the assessment should be made. Nothing was ever done to reclaim or benefit plaintiff's land after it was

brought into the district. The board was required to proceed to reclaim plaintiff's land in the manner prescribed by Section 10784, and to have some plan of reclamation with maps, profiles and other information as a basis for the assessment of benefits to accrue from the execution of said plans. No such plans were ever formulated or adopted and no work or construction of any kind was ever done or proposed to be done that would result in a benefit to plaintiff's land after it was brought into the district. What information was before the commissioners at the time they assessed benefits to plaintiff's land is not revealed, but it is certain that the commissioners did not have before them the required information in reference to proposed plans and operations from which they could determine what benefits would accrue from the execution of said plans. In the absence of such information there was no proper basis for the assessment made by the commissioners. The district was seeking to exercise a delegated governmental power of taxation, and in order to exercise that power legally it was required to proceed in exact compliance with the conditions of the law granting that power and to do all things in the manner and form designated by the statutes. ''Whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative, namely, that the thing shall not be done otherwise.'' [State ex rel. Barlow v. Holtcamp, 322 Mo. 258, 268, 14 S. W. (2d) 646.]

Appellant claims the support of a liberal construction of the statutes to maintain its position that the procedure taken was justified. The rule of liberal construction of a statute granting power to tax is never permissible, but a strict rule of construction is always applied. In the case of Ex Parte Keane v. Strodtman, 323 Mo. 161, 167, 18 S. W. (2d) 896, the court had under consideration the power of a municipality to tax the occupation of the petitioner who had been convicted for violation of an ordinance, and imprisoned for failing to pay a fine. What the court said in that case is appropriate here as follows:

''A tax law, such as is sought to be imposed in this instance, is *in invitum*. Generally speaking this rule obtains that 'the power to tax is a high governmental power and when the Legislature grants that power to another tribunal, it can only be exercised in strict conformity to the statute in which the power is granted, and departure in any material part will be fatal to the attempt to exercise it.' . . . The familiar maxim of *expressio unius est exclusio alterius* may also be invoked, for the maxim is never more applicable than in the construction of statutes. . . . Certainly where, as at bar, the statute (Sec. 8702) limits the doing of a particular thing to a prescribed manner, it necessarily includes in the power granted the negative that it cannot be otherwise done. This is the general rule as to the application of the maxim. Even more relevant under the facts in this case, is the interpretation given to it by the Kansas City Court of Appeals in

Dougherty v. Excelsior Springs, 110 Mo. App. 623, 626, 85 S. W. 112, to this effect 'that when special powers are conferred, or where a special method is prescribed for the exercise and execution of a power, this brings the exercise of such power within the provisions of the maxim *expressio unius*, etc., and by necessary implication forbids and renders nugatory the doing of the thing specified except in the particular way pointed out.' ''

The foregoing expressions are clearly applicable to the exercise of powers granted to a drainage district, which under the laws of Missouri is a public governmental corporation, Land & Stock Co. v. Miller, 170 Mo. 240, 70 S. W. 721, and referred to as a municipal corporation and an instrumentality of government. [Honey Creek Drainage Dist. v. Farm City Inv. Co. (Mo.), 32 S. W. (2d) 753.]

The importance to a landowner of a strict compliance by the district with the procedure outlined in the statute to obtain an assessment of benefits and a levy of taxes against his land is accentuated by the fact that there is no right of appeal from the judgment of a court approving the report of commissioners assessing benefits, the right of appeal being limited to cases involving the amount of damages by Section 10757. [In re District, 240 S. W. 203; In re Birmingham Drainage District, 274 Mo. 140, 202 S. W. 404.]

There is much reason and force in the contention of respondent that the invalidity of the judgment assessing benefits appears upon the face of the record in that the judgment is not responsive to nor supported by adequate pleadings or procedure. The petition for the appointment of appraisers was to have benefits assessed pursuant to the statute, which plainly provides for an assessment of benefits that *will accrue* in carrying out some plan of reclamation. There was no plan of reclamation filed with the clerk of the court accompanying this petition although the statute required it. The appraisers were appointed and assessed benefits to plaintiff's land without having before them any proposed plan of reclamation of plaintiff's land such as the secretary of the board was required to furnish and from which the commissioners could estimate what benefits, if any, would accrue to plaintiff's land by the execution of such plan. The appraisers, under the law, were limited to a consideration of the benefits that would be derived from the execution of some proposed plan, and the statute, Section 10755, expressly provides that "they shall assess only such benefits as will be derived from the construction of the works and improvements set out in the plan of reclamation." The judgment approving the report of the commissioners assessed benefits against plaintiff's land that *had accrued*. This was not responsive to the petition of the district to have benefits assessed that *would accrue* from the execution of some proposed work. There is no conceivable theory upon which the commissioners assessed benefits, or that the court affirmed such assessment, other than that it was found that

plaintiff's land had been benefited by something that was done prior to the time that the land was brought into the district. The application of such theory was clearly *ex post facto* and wholly unauthorized. The record of such proceeding and judgment is wide open to collateral as well as direct attack made upon it by respondent.

Moreover, there is another, a better, and a conclusive reason why the judgment of the court approving the report of the commissioners assessing benefits is not available under the plea of *res judicata,* and that is, because under the law the taxing of plaintiff's land for alleged benefits is not a judicial function to be performed in a proceeding instituted by the district, but is purely a legislative function which is delegated by the General Assembly to the district to be exercised in the manner designated. It is the action of the district and not the action of the court that determines the validity of the benefit assessment made against plaintiff's land. [In Re Birmingham Drainage District, 274 Mo. 140, 155, 202 S. W. 404; Houck v. Drainage District, 248 Mo. 373, 154 S. W. 739.] The court had no power to tax plaintiff's land, and the district had no such taxing power except when exercised in strict conformity to the statute granting such power.

It plainly appears that the methods used in behalf of the district to procure an assessment of benefits against plaintiff's land were not in compliance with the law, but in flagrant violation thereof, and so infected with illegality as to render the whole procedure void and to deprive the district of any right of lien upon plaintiff's land.

The judgment of the trial court that the defendant does not have any lien on plaintiff's land was correct and was justified under the law applicable to the facts. It is further observed, though not mentioned by appellant, that the decree of the trial court enjoined and restrained defendant "from asserting or attempting, in any manner to enforce any lien or claim for any drainage taxes or other drainage purposes." This is equivalent to a perpetual restraint of defendant from ever asserting any right of lien at any time in the future even though it be based upon a legal and proper procedure. Inasmuch as plaintiff's land is now in the district, it could be subjected to an assessment of benefits and made subject to a lien on account of some future work or improvement legally proposed and carried out by the district. The restraint imposed upon defendant should be limited to the assertion or enforcement of the right of lien claimed in this case. It is permissible to make such modification here (Sec. 1229, R. S. 1939), and as modified the judgment of the trial court should be affirmed, and the Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment of the trial court as modified in accordance with said opinion is affirmed. All concur.